**WO**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Janet Cheatham, | No. CV-15-02137-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| ADT Corporation, et al., | |
| Defendants. | |

On September 9, 2015, Plaintiff Janet Cheatham initiated this action by filing a class action complaint against Defendants ADT Corporation ("ADT Corp.") and ADT LLC in the Maricopa County Superior Court.  Doc. 1-1 at 9-33.  The complaint asserts claims against ADT LLC for consumer fraud and unjust enrichment, and claims against ADT Corp. for consumer fraud, unjust enrichment, and strict products liability.  *Id.*

On October 23, 2015, Defendants removed the action to this Court pursuant to 28 U.S.C. § 1441(a), asserting federal jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2).  Doc. 1-1 at 1-7.  Each Defendant has filed its own motion to dismiss.  ADT Corp. asks the Court to dismiss it from this case for lack of personal jurisdiction or, in the alternative, to dismiss the case for failure to state a claim.  Doc. 9.  ADT LLC asks the Court to dismiss the case for failure to state a claim or, in the event any of Plaintiff's claims survive, to strike Plaintiff's class allegations.  Doc. 10.

The motions have been fully briefed (Docs. 17, 18, 19, 24) and no party has requested oral argument.  For the reasons set forth below, ADT Corp.'s motion will be

granted, and ADT LLC's motion will be granted in part and denied in part.

## I.   Background.

### A.   Parties.

Plaintiff is a resident and citizen of Maricopa County, Arizona.  Complaint, ¶ 16. Defendant ADT Corp. is a Delaware corporation with its principal place of business in Boca Raton, Florida.  *Id.*, ¶ 17.  Defendant ADT LLC is a Florida limited liability corporation with its principal place of business in Boca Raton.  *Id.*, ¶ 18.  Defendants are in the business of selling home security equipment and monitoring services across the nation, including in Arizona.  *Id.*, ¶ 20.  This case concerns the company's wireless home security system.

### B.   ADT's Wireless Security System.

ADT's wireless security system uses a variety of devices – including wireless panels, sensors, detectors and cameras – to monitor a customer's home.  *See* www.adt. com/wireless-security (accessed Jan. 18, 2016).  If an unauthorized entry is detected, ADT alerts the user and offers to contact the police.  *See id.*

In July 2014, *Forbes* published an article detailing vulnerabilities associated with this system.  *See* Kashmir Hill, *How Your Security System Could Be Used to Spy on You*, Forbes (Jul. 23, 2014), www.forbes.com/sites/kashmirhill/2014/07/23/how-your-security-system-could-be-used-to-spy-on-you (accessed Jan. 18, 2016).  The article explains that the system's components communicate with one another using unencrypted and unauthenticated signals.  *Id.*  An unauthorized third party can interfere with these signals, thereby gaining control of the system.  *Id.*  According to the article, one researcher found a way to hack into a research participant's security system using a readily available device called a "Software-Defined Radio."  *Id.*  Using this device, the researcher could deactivate the participant's security system, trigger a false alarm, and spy on the participant using her system's video monitoring equipment.  *Id.*

Plaintiff's allegations largely track the *Forbes* article.  She alleges that "ADT's wireless systems are unencrypted and unauthenticated, and otherwise insecure," that they

are easily hacked by third parties, and that a hacker can deactivate a customer's system, trigger a false alarm, or use the customer's cameras to spy on her.  Complaint, ¶¶ 30-33. She alleges that all of this can be done using a Software-Defined Radio, and that it is possible to purchase such a device on the open market with no restrictions for less than $10.  *Id.*, ¶ 34.  Finally, she alleges that ADT has been aware of these vulnerabilities at least since the *Forbes* article was published.  *Id.*, ¶ 35.

Plaintiff contends that ADT has engaged in unlawful deception since discovering these security vulnerabilities.  She alleges that ADT does not warn its customers to take precautions against hacking, and does not inform them that its system uses unencrypted and unauthenticated signals.  *Id.*, ¶¶ 38, 42.  She further alleges that ADT deliberately refuses to disclose this information because it knows that consumers would not purchase an ADT wireless security system if they knew about these vulnerabilities.  *Id.*, ¶ 45. According to Plaintiff, "customers are much less safe than they think that they are when ADT's wireless systems are activated."  *Id.*, ¶ 44.

## C.   Marketing Statements.

Plaintiff also contends that ADT produces advertisements for its wireless security system that are misleading in light of the system's vulnerabilities.  Complaint, ¶¶ 24-29. She points to a number of statements on the company's website.  *Id.*  For example, the website encourages consumers to "get security you can count on every day of the year" and to "live worry-free with ADT Security for less than $1 a Day."  *Id.*, ¶ 25(a), (c) (punctuation and capitalization modified).  It states that ADT can provide the customer with a "haven . . . armed with 24-hour-a-day protection, 365 days a year."  *Id.*, ¶ 25(b). And it promises "fast, reliable security protection," explaining:

> ADT stays constantly alert with six Customer Monitoring Centers operating day and night across the country.  Our Customer Monitoring Centers are nationally connected, equipped with secure communication links and backed by the latest technology so that our security team is always ready to act the moment an incident occurs.

*Id.*, ¶ 25 (punctuation and capitalization modified).

ADT's website makes a number of additional claims about the reliability and

efficacy of its wireless security system.  For example:

- "When you want to do everything you can to safeguard your loved ones, your home and your treasured possessions, you owe it to yourself and your family to talk to us about our continuous 24/7 protection."

- "When it comes to you and your family's safety, we let nothing stand in the way of our professionally trained team immediately working to help ensure your safety."

- "Only home security monitoring provides you and your family with the reassurance that even when no one's home, you're protected against unwanted entry and property loss."

- "When the alarm is triggered, every second counts."

- "When security counts, count on the company with a fast response time."

*Id.*, ¶ 26.

ADT's website also emphasizes the technological sophistication of ADT and its products.  For example:

- "ADT takes pride in using the most advanced technology."

- "Only ADT has the most security industry experience, is the leader in innovative security technology, and can provide you with the fastest response times."

- "Our experience, technology and people make the difference in your security protection."

- "You invest in ADT home security and automation systems to help protect your loved ones.  Your satisfaction is important to us, and is the reason we are committed to providing you with state-of-the-art equipment and service."

*Id.*, ¶ 28.

**D.    Facts Specific to Plaintiff.**

Plaintiff alleges that she decided to purchase an ADT wireless security system

- 4 -

after seeing the web advertisements discussed above.  *Id.*, ¶ 47.  On May 29, 2013, she signed a contract under which Defender Security Company – an authorized ADT dealer – agreed to sell and install the system components in her home, and ADT LLC agreed to provide monitoring services using this equipment.  *Id.*, ¶ 48.  Plaintiff asserts that ADT Corp. provided Defender Security Company with the equipment it sold to her, but she acknowledges that she had no direct interaction with ADT Corp.  *Id.*, ¶ 50.

In November 2014, Plaintiff noticed items moved in her residence on several occasions.  *Id.*, ¶¶ 54-55.  These incidents – which Plaintiff characterizes as "security breaches" – were not detected by her wireless security system.  *Id.*  Plaintiff began to research her security system after these incidents, which is when she discovered that the system used unencrypted and unauthenticated signals.  *Id.*, ¶ 56.  Plaintiff contends that she would not have purchased her security system or entered into a monitoring contract with ADT LLC if she had known about the system's lack of encryption and authentication at the time of these transactions.  *Id.*, ¶ 57.  Notwithstanding her dissatisfaction, Plaintiff remains bound to her contract with ADT LLC and will have to pay a penalty to cancel it.  *Id.*, ¶ 58.

**E.     This Action.**

Plaintiff asserts claims against ADT LLC and ADT Corp. for consumer fraud and unjust enrichment, and an additional claim against ADT Corp. for strict products liability. Plaintiff purports to bring this action on behalf of herself and a putative class that includes "[a]ll Arizona residents and entities who entered into an ADT Alarm Services Contract and purchased ADT Corp. wireless security equipment." *Id.*, ¶ 59.  She requests several forms of relief, including actual and punitive damages, an injunction requiring ADT to "secure its wireless systems," and an injunction requiring ADT to warn class members about the vulnerability of its system. *Id.*, ¶¶ 85, 96, 104.

Plaintiff contends that her putative class likely consists of thousands of individuals and entities in Arizona.  *Id.*, ¶ 60.  She contends that her claims are typical of those possessed by members of the class because (1) all of ADT's wireless security systems

have the same defect (i.e., the lack of encryption or authentication), (2) anyone who purchases monitoring services from ADT LLC must enter the same contract, and (3) ADT's misrepresentations and omissions "were uniformly made to Plaintiff and all Class members." *Id.*, ¶ 62.  Finally, she alleges that she will "fairly and adequately represent and protect the interests of the class," and that class adjudication is superior to any other mechanism for resolving this controversy. *Id.*, ¶¶ 63-64.

## II.   ADT Corp.'s Motion to Dismiss.

ADT Corp. contends that it is not subject to this Court's jurisdiction and moves for dismissal under Rule 12(b)(2).  Doc. 9 at 3-5.  In the alternative, ADT Corp. argues that Plaintiff has failed to state any viable claim against it, and moves for dismissal under Rule 12(b)(6).  *Id.* at 6-7.  Because the Court lacks jurisdiction over ADT Corp., the Court will not reach the 12(b)(6) motion.

To withstand a 12(b)(2) motion, the plaintiff must show that the defendant is properly subject to the court's jurisdiction. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (citation omitted).  The plaintiff must make only a prima facie showing of jurisdictional facts when the defendant's motion is based on written materials rather than an evidentiary hearing. *Id.* (citation omitted).  In ruling on such a motion, the court will consider the pleadings and any affidavits submitted by the parties, accepting as true any uncontroverted allegations in the complaint and resolving any factual conflicts in the plaintiff's favor. *Id.* (citations omitted).

The court may order jurisdictional discovery where "pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 n.1. (9th Cir. 1977).  The court may also grant a defendant's motion without jurisdictional discovery if it is clear that the plaintiff cannot establish personal jurisdiction over the defendant. *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977) (district court may deny plaintiff's request for jurisdictional discovery "when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for

jurisdiction"); *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995) ("[W]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the Court need not permit even limited discovery") (citation omitted).

ADT Corp. contends that it has no contacts with Arizona. ADT Corp. provides a declaration from Lorna R. Simms, its corporate secretary. Doc. 9-1. Simms states that the company has no employees apart from its officers, and conducts no business apart from owning another holding company. *Id.*, ¶ 3. Simms further states that ADT Corp. does not purchase, package, distribute, or sell alarm equipment or any other goods, and that it conducts no business in Arizona, maintains no offices in Arizona, owns no real property in Arizona, has no employees or agents in Arizona, does not solicit or engage in business in Arizona, and does not advertise in Arizona or elsewhere. *Id.*, ¶¶ 9-17. Simms further states that ADT Corp. is not a member of ADT LLC, is not involved in its operations, and has no right to control it. *Id.*, ¶ 8.

ADT Corp. also provides a declaration from Ryan Petty, ADT LLC's Vice President of Product Development & Innovation. Doc. 9-2. Petty states that ADT Corp. does not make, package, distribute, or sell alarm equipment, and does not participate in any way in the operations of ADT LLC. *Id.*, ¶¶ 6-7.

Plaintiff argues that ADT Corp.'s filings with the Security and Exchange Commission ("SEC") paint a starkly different picture from that set forth in ADT Corp.'s affidavits. For example, a recent Form 10-K filed by ADT Corp. states:

> The ADT Corporation . . . is a leading provider of monitored security, interactive home and business automation and related monitoring services in the United States and Canada. . . . We currently serve approximately 6.7 million residential and small business customers, making us the largest company of our kind in both the United States and Canada. We deliver an integrated customer experience by maintaining the industry's largest sales, installation, and service field force as well as a robust monitoring network, all backed by the support of approximately 17,500 employees.

Doc. 18-2 at 5.

These statements do not show that ADT Corp. is subject to jurisdiction in Arizona.

Courts have recognized that companies may omit distinctions between related corporate entities in their SEC filings, and still insist on these distinctions when haled into court. *See Doe v. Unocal Corp.*, 248 F.3d 915, 928 (9th Cir. 2001) ("references in the parent's annual report to subsidiaries or chains of subsidiaries as divisions of the parent company do not establish the existence of an alter ego relationship"); *Nat'l Prod. Workers Union Tr. v. CIGNA Corp.*, No. 05 C 5415, 2007 WL 1468555, at *7 (N.D. Ill. May 16, 2007) ("'we' and 'our' in annual report did not overcome parent and subsidiary's separate identities such that subsidiary's forum contacts could be imputed to parent") (citing *Gruca v. Alpha Therapeutic Corp.*, 19 F. Supp. 2d 862, 868 (N.D. Ill. 1998)).

Plaintiff also attempts to show that ADT Corp. holds patents for ADT's security system technology.  Doc. 18 at 8.  Plaintiff notes that a recent Form 8-K filed by ADT Corp. contains an exhibit titled: "Patent Agreement, dated as of September 26, 2012, by and between Tyco International Ltd. and The ADT Corporation."  Doc. 18-3 at 10. Another exhibit refers to a trademark agreement between several companies, including ADT Corp.   *Id.*   Plaintiff does not attach the exhibits or offer the Court any basis for inferring that the agreements relate to products at issue in this case.  Moreover, Defendant points the Court to evidence that forecloses the inference that ADT Corp. owns patents or trademarks associated with these products.  Doc. 20 (ADT Corp. is not listed as a current or prior owner or assignee of any patent or trademark on the U.S. Patent & Trademark Office database).   In light of this evidence, the Court finds that mere references to unspecified patent and trademark agreements in a Form 8-K do not controvert ADT Corp.'s evidence that it has no involvement in the sale of home security equipment.

Finally, Plaintiff notes that ADT Corp. has consented to jurisdiction in other cases pertaining to the ADT wireless security system.  Doc. 18 at 9 (citing Doc. 18-4).  ADT Corp. explains that it chose to waive its jurisdictional objection in these cases because the distinction between ADT Corp. and ADT LLC was immaterial to the substantive defense the company intended to present.  Doc. 19 at 4-5.  By contrast, the distinction *is* material here: Plaintiff is precluded from bringing a strict liability claim against ADT LLC by her

contract with the company, which means she can only recover on this claim if ADT Corp. appears as a codefendant. *Id.* at 5 (citing Complaint, ¶ 96 ("Plaintiff and the members of the Class are not in contractual privity with ADT Corp., and therefore their claims against ADT Corp. are not affected by the economic loss rule.")).  In any event, ADT Corp. does not need to show that it has a good reason for declining to consent to jurisdiction here because "[a] party's consent to jurisdiction in one case extends to that case alone." *Weisler v. Cmty. Health Sys., Inc.*, No. CIV. 12-0079 MV/CG, 2012 WL 4498919, at *7 (D.N.M. Sept. 27, 2012); *see Dow Chem. Co. v. Calderon*, 422 F.3d 827, 835 (9th Cir. 2005) ("defense on the merits in a suit brought by one party cannot constitute consent to suit as a defendant brought by different parties").

The Court may exercise general jurisdiction over a defendant when it contacts with Arizona are substantial, or continuous and systematic. *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1396 (9th Cir. 1986).  Plaintiff has made no showing that ADT Corp. has such contacts with Arizona.  Alternatively, the Court may assert specific jurisdiction if Plaintiff demonstrates that (1) ADT Corp. purposefully availed itself of the privileges of conducting activities in Arizona, thereby invoking the benefits and protections of its laws, or purposely directed conduct at Arizona that has effects in the forum, (2) the claims arise out of or result from ADT Corp.'s Arizona-related activities, and (3) the exercise of jurisdiction is reasonable. *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).  Plaintiff has not made this showing, and has given the Court no reason to believe that further discovery would allow it to do so.  Therefore, ADT Corp.'s 12(b)(2) motion will be granted and Plaintiff's request to conduct jurisdictional discovery will be denied.

**III.   ADT LLC's Motion to Dismiss.**

Plaintiff asserts consumer fraud and unjust enrichment claims against ADT LLC. Complaint, ¶¶ 67-85, 97-104.  ADT LLC moves to dismiss these claims under Rule 12(b)(6).  Doc. 10 at 3-13.

1       **Legal Standard.**

2           A successful 12(b)(6) motion must show either that the complaint lacks a

3   cognizable legal theory or fails to allege facts sufficient to support its theory. *Balistreri*

4   *v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint that sets forth a

5   cognizable legal theory will survive a motion to dismiss as long as it contains "sufficient

6   factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

7   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550

8   U.S. 544, 570 (2007)). A claim has facial plausibility when "the plaintiff pleads factual

9   content that allows the court to draw the reasonable inference that the defendant is liable

10  for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

11  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more

12  than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550

13  U.S. at 556).

14          In ruling on a 12(b)(6) motion, the Court takes the plaintiff's well-pleaded factual

15  allegations as true and construes them in the light most favorable to the plaintiff. *Cousins*

16  *v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Legal conclusions couched as factual

17  allegations are not entitled to a presumption of truth and are not sufficient to defeat a

18  12(b)(6) motion. *Iqbal*, 556 U.S. at 678.

19      **B.    Arizona Consumer Fraud Act.**

20          The Arizona Consumer Fraud Act ("ACFA") broadly prohibits fraudulent,

21  deceptive, or misleading conduct in connection with the sale or advertisement of

22  consumer goods and services. Ariz. Rev. Stat. § 44-1522(A). Arizona courts construe

23  the ACFA to provide a right of action on any person damaged by a violation of the Act.

24  *Sellinger v. Freeway Mobile Home Sales, Inc.*, 521 P.2d 1119, 1122 (Ariz. 1974). To

25  prevail, a plaintiff must establish that (1) the defendant made a misrepresentation in

26  violation of the Act, and (2) defendant's conduct proximately caused plaintiff to suffer

27  damages. *Parks v. Macro-Dynamics, Inc.*, 591 P.2d 1005, 1008 (Ariz. Ct. App. 1979). It

28

- 10 -

is not necessary for the plaintiff to show that the defendant made an affirmative misstatement.  Material omissions are also actionable.  *Maurer v. Cerkvenik-Anderson Travel, Inc.*, 890 P.2d 69, 72 (Ariz. Ct. App. 1994).  A misrepresentation causes injury where the consumer actually relies on it, but "unlike common law fraud, this reliance need not be reasonable."  *Parks*, 591 P.2d at 1008 (citing *Peery v. Hansen*, 585 P.2d 574 (Ariz. Ct. App. 1978)).

Plaintiff asserts that ADT LLC violated ACFA by misrepresenting the reliability and technical sophistication of its wireless security system and by failing to disclose that this system was "unencrypted and unauthenticated, and otherwise insecure."  Complaint, ¶¶ 24-30, 67-85.  ADT LLC argues that this claim is untimely and fails to identify any misrepresentation or consequent damages.  Doc. 10 at 5-13.

### 1.    Statute of Limitations.

Private actions under the ACFA are subject to a one-year statute of limitations. Ariz. Rev. Stat. § 12-541(5); *see Murry v. W. Am. Mortgage Co.*, 604 P.2d 651, 654 (Ariz. Ct. App. 1979).  The limitations period begins to run when the consumer discovers or with reasonable diligence should have discovered both the "who" and the "what" of her claim.  *Gustafson v. Goodman Mfg. Co. L.P.*, No. 3:13-CV-8274-HRH, 2014 WL 1669069, at *5 (D. Ariz. Apr. 28, 2014) (citations omitted).  "This occurs when the consumer knows whose products were involved and that the products were not performing as expected."  *Id.*  The date when discovery occurred is a question of fact. *Walk v. Ring*, 44 P.3d 990, 996 (Ariz. 2002).  For this reason, a plaintiff's allegations about the date of discovery must be accepted as true at the 12(b)(6) stage, and a claim should not be dismissed as untimely unless the running of the statute of limitations is "apparent on the face of the complaint."  *Frazer v. Millennium Bank, N.A.*, No. 2:10-CV-01509-JWS, 2010 WL 4269584, at *3 (D. Ariz. Oct. 27, 2010).

Plaintiff alleges that she discovered that her wireless security system was unencrypted in November 2014, less than a year before she initiated this action on September 9, 2015.  Complaint, ¶¶ 54-56.  Defendant argues that she should have

discovered this fact in July 2014 when the *Forbes* article was published.  Doc. 10 at 13; *see How Your Security System Could Be Used to Spy on You*, *supra*.  But whether a consumer exercising reasonable diligence would have discovered the *Forbes* article, and whether the article provided sufficient notice to trigger the limitations period, are questions of fact that cannot be resolved on a motion to dismiss.  As the Arizona Supreme Court has explained, "determinations of the time when discovery occurs and a cause of action accrues are usually and necessarily questions of fact for the jury."  *Walk*, 44 P.3d at 996 (quotation marks and citations omitted); *see also id.* ("[W]e do not believe it can be said as a matter of law that a reasonable person in this circumstance can be required to undertake such questioning or be held accountable for not doing so.  This is the very sort of factual determination that must be left for the jury.").  The Court cannot dismiss the ACFA claim as untimely.

### 2.     Misrepresentation.

The ACFA prohibits persons from engaging in "any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission" in connection with the sale or advertisement of consumer goods or services.  Ariz. Rev. Stat. § 44-1522(A).  A statement is "deceptive" if it has the "tendency and capacity to convey misleading impressions to consumers," even if "interpretations that would not be misleading also are possible."  *Madsen v. W. Am. Mortgage Co.*, 694 P.2d 1228, 1232 (Ariz. Ct. App. 1985) (quotation marks and citations omitted).  Whether a statement has the tendency to mislead is determined from the perspective of the "least sophisticated reader," in light of "all that is reasonably implied, not just from what is said."  *Id.* (citations omitted).

Plaintiff asserts that ADT LLC violated the ACFA both by making affirmative misrepresentations and by omitting material facts with the intent to deceive prospective buyers.  Complaint, ¶¶ 24-46, 67-85.  ADT LLC argues that Plaintiff cannot state a claim on either theory because its affirmative statements were only "puffery" and in any case

not false or misleading, and because it had no duty to disclose the communications protocol used by its wireless security system.

### a.      Affirmative Statements.

The complaint does not allege that ADT LLC made any statements about how the components of its wireless security system communicated with one another, whether the system used an encrypted or authenticated signal, or whether the system could be hacked. Instead, the complaint focuses on two types of statements: (1) claims about the reliability and efficacy of the wireless security system – e.g., that it "protects against unwanted entry and property loss" and provides "reliable security protection," and (2) claims about the technological sophistication of ADT LLC and its product – e.g., that the company "takes pride in using the most advanced technology," "is the leader in innovative security technology," and is "committed to providing . . . state-of-the-art equipment and service." Complaint, ¶¶ 25-26, 28.  The complaint identifies one additional statement as deceptive: the claim that "Our Customer Monitoring Centers are nationally connected, *equipped with secure communication links* and backed by the latest technology so that our security team is always ready to act the moment an incident occurs."  *Id.* at ¶ 25 (emphasis added).

ADT LLC contends that these statements cannot give rise to an action for fraud because they are puffery.  Doc. 10 at 5-6.  In the alternative, it argues that Plaintiff has not pleaded sufficient factual material to establish that any of these claims is false or misleading.  *Id.* at 9.  Finally, with respect to the statement about "secure communication links," ADT LLC argues that this sentence is irrelevant because it clearly describes ADT's monitoring centers, not its wireless security systems.  *Id.* at 24.

Puffery is "[t]he expression of an exaggerated opinion – as opposed to a factual representation – with the intent to sell a good or service."  Black's Law Dictionary (10th ed. 2014).  Because puffery is a subjective characterization of a product's value rather than a representation of fact, it cannot give rise to a fraud claim.  *See Law v. Sidney*, 53 P.2d 64, 66 (Ariz. 1936) (fraud "cannot be predicated upon the mere expression of an

opinion or upon representations in regard to matters of estimate or judgment"); *see also Sorrells v. Clifford*, 204 P. 1013, 1017 (Ariz. 1922); *Ellis v. First Nat'l Bank,* 172 P. 281, 284 (Ariz. 1918).   As the Ninth Circuit has explained in an analogous context, "the difference between a statement of fact and mere puffery rests in the specificity or generality of the claim."   *Newcal Indus., Inc. v. Ikon Office Solutions*, 513 F.3d 1038, 1053 (9th Cir. 2008) (citing *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990)).   "Thus, a statement that is quantifiable, that makes a claim as to the 'specific or absolute characteristics of a product,' may be an actionable statement of fact while a general, subjective claim about a product is non-actionable puffery."   *Id.* (citing *Cook*, 911 F.2d at 246).   Whether a defendant's statement is puffery or a representation of fact is a question of law that may properly be decided on a motion to dismiss.   *Cook*, 911 F.2d at 245.

ADT LLC cites several out-of-state cases dealing with similar claims made by other companies.   *See Tylka v. Gerber Prods. Co.*, No. 96 C 1647, 1999 WL 495126, at *8 (N.D. Ill. July 1, 1999) (baby food company's claim to provide the "most wholesome nutritious safe foods you can buy anywhere in the world" was puffery); *Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232, 1237 (S.D. Fla. 2006) ("it is well-settled that '[a] general promise that the trip will be 'safe and reliable' does not constitute a guarantee that no harm will befall plaintiff.'") (citing *Wilson v. Am. Trans Air, Inc.*, 874 F.2d 386, 391 (7th Cir. 1989)); *Catalano v. N.W.A. Inc.*, No. PI 98-7768, 1998 WL 35483144, at *9 (Minn. Dist. Ct. Sept. 15, 1998) (travel company's promise of "worry-free" vacation was puffery).   Plaintiff responds that the ACFA's "least sophisticated reader" standard is more demanding than the standard applied in these cases.   Doc. 17 at 6-7.   In addition, Plaintiff cites as persuasive authority a report and recommendation from a Magistrate Judge for this District which found that ADT's trademark ("Always there") was not puffery for purposes of the ACFA, but instead a representation from which "the least sophisticated consumer might infer . . . that ADT would actively monitor the alarm system and respond in a way calculated to deter or prevent a break-in."   *Flores v. ADT*

*Sec. Servs., Inc.*, No. CV 10-036-TUC-FRZ, 2010 WL 6389598, at *6 (D. Ariz. June 28, 2010), *report and recommendation adopted*, 2011 WL 1211516 (D. Ariz. Mar. 31, 2011).

The Court agrees that certain claims made by ADT LLC about the efficacy of its wireless security system are puffery. For example, the company's claim that its system provides "worry-free" living (Complaint, ¶ 25(c)) is a statement of opinion, not fact. This claim is not amenable to general verification or falsification because its truth or falsity for a particular consumer depends as much on the characteristics of that consumer as the efficacy of the product. An abnormally anxious consumer might find it impossible to achieve "worry-free" living even in a fortified bunker, while an abnormally easygoing consumer might find it possible to achieve worry-free living without any security system at all. For similar reasons, it is impossible to provide an objective answer to the question whether "you owe it to yourself and your family to talk to [ADT]." *Id.*, ¶ 26(a).

But when ADT LLC claims that its wireless security system "protects against unwanted entry and property loss" and provides "reliable security protection" (*id.*, ¶¶ 25(d), 26(c)), it is not simply expressing an opinion. At least in some circumstances, the reliability and efficacy of a security system are facts that can be measured and quantified. For example, if a company's system fails often, it may be false and misleading to represent that the system is "reliable," notwithstanding the imprecision of that term. Similarly, if customers using a company's security system are just as likely to be burgled as those without a security system, it is false and misleading for the company to represent that its system protects against burglary.[1]

Absent further development of the record, the Court cannot determine whether this

---

[1] None of ADT LLC's cases are to the contrary. *Tylka v. Gerber Products Co.* involved a statement that was obviously exaggerated – no reasonable consumer would rely on a company's superlative-laden claim to provide the "most wholesome nutritious safe foods you can buy anywhere in the world." In contrast, there is nothing exaggerated about ADT LLC's claim to provide "reliable security protection." *Isbell v. Carnival Corp.* and related cases are also distinguishable. These cases hold that an injured traveler cannot sue his travel company based on the company's representation that it provides "safe and reliable" vacations. Such a representation is not refuted by one instance where a traveler has an unsafe vacation. By contrast, ADT LLC's claim that it provides "reliable security protection" might very well be refuted by evidence that of its wireless security systems are easily hacked.

is a case where a product's lack of reliability and efficacy is objectively verifiable, or a case where reasonable people may disagree about whether a product possesses these qualities.  ADT LLC argues that there is no need for further development of the record because Plaintiff has not alleged sufficient facts to render plausible her claim that ADT LLC's wireless security system is unreliable and ineffective (Doc. 10 at 9-10), but the Court does not agree.  Plaintiff alleges that "third parties can hack into ADT's wireless systems with, *inter alia*, something as simple as a Software-Defined Radio . . . which sells on the open market with no restrictions for less than $10."  Complaint, ¶ 34.  She further alleges that this device can be used to "remotely disconnect or turn off the security system[]," rendering it nonfunctional.  *Id.*, ¶ 31.  Assuming these facts to be true, as the Court must in ruling on this motion, the Court finds plausible Plaintiff's claim that ADT LLC's wireless security system does not provide the "reliable security protection" and "protect[ion] against unwanted entry and property loss" that is promised.  The Court therefore will not dismiss Plaintiff's claims based on ADT LLC's statements about the reliability and efficacy of its product.

With respect to ADT LLC's statements about its technological sophistication, ADT LLC cites six cases, including one from within this circuit, for the proposition that "[g]eneral marketing statements regarding advanced or 'state-of-the-art' technology are nonactionable puffery."  Doc. 10 at 8.[2]  Plaintiff does not address these cases and does not even mention the relevant statements in her opposition.  *See* Doc. 17 at 4-7.  The Court finds the cases persuasive, and holds that ADT LLC's statements about its technological sophistication (Complaint, ¶ 28) are too far removed from any "specific or absolute characteristics of [its] product" to be actionable.  *Newcal*, 513 F.3d at 1053

---

[2] *Robins Printing Co. v. Crosfield Elecs., Inc.*, No. 92-2446, 1994 WL 284105 (6th Cir. 1994) (unpublished opinion); *Winans by & through Moulton v. Emeritus Corp.*, No. 13-CV-03962-SC, 2014 WL 970177, at *9 (N.D. Cal. Mar. 5, 2014); *Deburro v. Apple, Inc.*, No. A-13-CA-784-SS, 2013 WL 5917665, at *4 (W.D. Tex. Oct. 31, 2013); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 834 F. Supp. 2d 566, 592 (S.D. Tex. 2011), *rev'd on other grounds sub nom. Lone Star Nat'l Bank, N.A. v. Heartland Payment Sys., Inc.*, 729 F.3d 421 (5th Cir. 2013); *Shema Kolainu-Hear Our Voices v. ProviderSoft, LLC*, 832 F. Supp. 2d 194, 209 (E.D.N.Y. 2010).

1    (citation omitted).

2          With respect to ADT LLC's statement that "Our Customer Monitoring Centers are

3    . . . equipped with secure communication links," Plaintiff urges the Court to follow the

4    Central District of Illinois in holding that the company's customers may state a

5    misrepresentation claim based on this statement.  Doc. 17 at 5-6 (citing *Baker v. ADT*

6    *Corp.*, No. 2:15-cv-02038-CSB-EIL at 16-17, (C.D. Ill. Oct. 5, 2015)).   ADT LLC

7    counters that "[n]o rational consumer could parse the clear syntax of that sentence to

8    mean that the signals of her home's wireless alarm components are encrypted."  Doc. 24

9    at 10.

10          Although the tendency of a statement to mislead is determined from the

11    perspective of the "least sophisticated reader," *Madsen*, 694 P.2d at 1232, it is not

12    determined from the perspective of a reader lacking a basic understanding of English

13    vocabulary or grammar.   The Court agrees with ADT LLC that even the least

14    sophisticated reader could not read the statement "Our Customer Monitoring Centers are .

15    . . equipped with secure communication links" to say anything about the nature of

16    communications used by wireless security systems located in the home.

17          But that is not the end of the matter.  A consumer might infer from ADT LLC's

18    use of secure communication links at its monitoring centers that the company would also

19    provide secure communication links to its home-based security systems.  After all, those

20    systems are the key locations – where the monitoring of dangerous activity actually

21    occurs.  If a consumer could reasonably make this inference, ADT LLC may be liable for

22    this statement even though the statement does not speak directly to the communication

23    protocol used by its home security systems.  *See Madsen*, 694 P.2d at 1232 (courts must

24    consider "all that is reasonably implied" in determining whether a statement gives rise to

25    liability under the ACFA).  The Court therefore agrees with the *Baker* court that "further

26    clarification or context" is necessary to determine whether such an inference is

27    reasonable.  No. 2:15-cv-02038-CSB-EIL at 17.  The Court will not grant ADT LLC's

28    motion with respect to the statement about "secure communication links."

### b.      Omissions.

Plaintiff alleges that "ADT does not notify customers that their systems are unencrypted or insufficiently secure."   Complaint, ¶ 38.   Plaintiff contends that this constitutes an omission of material fact that is actionable under the ACFA.  Doc. 17 at 4-5.  ADT LLC counters that it had no duty to disclose the communications protocols used by its wireless security system.  Doc. 10 at 10.

The ACFA prohibits "concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission" in connection with the sale or advertisement of consumer goods or services.  Ariz. Rev. Stat. § 44-1522(A).  A claim under the ACFA's omission clause "requires proof that the omission is material and made with intent that a consumer rely thereon."  *State ex rel. Horne v. AutoZone, Inc.*, 275 P.3d 1278, 1281 (Ariz. 2012).   An omission is material if it is "logically related to the transaction in which it occurs and rationally significant to the parties in view of the nature and circumstances of the transaction." *Demaree v. Wal-Mart Stores, Inc.*, 511 F. App'x 660, 661 (9th Cir. 2013) (citing *Haisch v. Allstate Ins. Co.*, 5 P.3d 940, 945 (Ariz. Ct. App. 2000)).

ADT LLC contends that a claim under the ACFA's omission clause must also show that the defendant was subject to a duty to disclose the omitted information under the common law or another statute.   ADT LLC cites *Loomis v. U.S. Bank Home Mortgage*, 912 F. Supp. 2d 848 (D. Ariz. 2012), to support this proposition.  Doc. 24 at 11.  Plaintiff responds that this argument cannot be squared with the Arizona Supreme Court's decision in *Horne v. AutoZone*.  Doc. 17 at 4-5.

Plaintiff has the better of the argument.  *Horne* is the Arizona Supreme Court's most recent statement on the question, and it states in no uncertain terms that the ACFA "itself imposes [an] actionable duty . . . to refrain from . . . an 'omission of any material fact with intent that others rely' thereon."  275 P.3d at 1281 (citing Ariz. Rev. Stat. § 44-1522(A)).  In the face of a conflict between the Arizona Supreme Court and a federal district court on a question of Arizona law, the Arizona Supreme Court's decision is

controlling.  *See also Starbuck v. City & Cty. of S.F.*, 556 F.2d 450, 457 (9th Cir. 1977) ("The doctrine of stare decisis does not compel one district court judge to follow the decision of another.").

*Loomis* held that a claim under the ACFA's omission clause must show the defendant was under an independent duty to disclose the omitted information – i.e., a duty arising from the common law or another statute.  912 F. Supp. 2d at 856.  *Loomis* did not cite the Arizona Supreme Court's decision in *Horne*, nor explain how its holding could be reconciled with *Horne*'s statement that the ACFA itself imposes "an actionable duty . . . to refrain from . . . an omission of any material fact with intent that others rely thereon."[3]  Because *Loomis* misapprehended Arizona law, the Court cannot follow it.[4]

Plaintiff has adequately pleaded the other elements of an omission claim.  Docs. 10 at 10; 24 at 11-12.  Plaintiff alleges that ADT LLC deliberately failed to disclose the fact that its wireless security system uses an unencrypted protocol and that this omission was material.  Complaint, ¶¶ 45, 57, 81.  The complaint further alleges that this omission was "designed to mislead customers."  *Id.*, ¶ 45.  The complaint alleges sufficient factual material to render these allegations plausible.  *See id.*, ¶¶ 31-34.  Therefore, the Court concludes that Plaintiff has stated a claim under the ACFA's omission clause.

### 3.  Damages.

To state a claim under the ACFA, Plaintiff must allege that she has been damaged by ADT LLC's violation of the Act.  *Nataros v. Fine Arts Gallery of Scottsdale, Inc.*, 612

---

[3] *Loomis* relied instead on the Arizona Court of Appeals' decision in *Horne*, which was vacated by the Arizona Supreme Court on the precise question at issue here.  *See Horne*, 275 P.3d at 1283 ("we vacate the opinion of the court of appeals" with respect to issues addressed on appeal).  Even if the Court of Appeals' decision were good law, however, it does not support *Loomis*'s holding.  In *Horne*, the Court of Appeals explained that a plaintiff could establish liability under the ACFA's "unfair act or practice" clause by showing that the defendant had an independent duty to disclose the omitted information.  *State ex rel. Horne v. AutoZone, Inc.*, 258 P.3d 289, 299 (Ariz. Ct. App. 2011).  Such an approach, the Court of Appeals explained, would allow the plaintiff to "avoid the heightened intent requirement imposed by the omission clause."  *Id.*  It follows that a plaintiff who cannot identify an independent duty to disclose could proceed under the omission clause and grapple with its heightened intent requirement.

[4] The Court does not reach Plaintiff's alternative argument that ADT LLC was under a common law duty to disclose the omitted information.  Doc. 17 at 5.

P.2d 500, 504 (Ariz. Ct. App. 1980) (damages are an "essential element" of private right of action under the ACFA).  ADT LLC argues that Plaintiff has not alleged any damages. Doc. 10 at 11.  The Court disagrees.  Plaintiff alleges that she would not have purchased her wireless security system but for ADT LLC's violation of the ACFA.  Complaint, ¶ 57.  She further alleges that she continues to suffer economic loss because she remains bound by her monitoring contract with ADT LLC and will have to pay a penalty if she cancels it.  *Id.*, ¶ 58.  These allegations are sufficient to establish the damages element of Plaintiff's claim.  *See Parks*, 591 P.2d at 1009 ("out-of-pocket expenses necessary to perform the contract prior to discovering the fraud" are recoverable under the ACFA).

### 4.   Conclusion.

Plaintiff fails to state a claim under the ACFA based on ADT LLC's statements about its technological sophistication (Complaint, ¶ 28), its promise to provide "worry-free" living (*id.*, ¶ 25(c)), or its claim that "you owe it to yourself and your family to talk to [ADT]," (*id.*, ¶ 26(a)).  The Court will grant ADT LLC's motion to dismiss as to these statements.  Plaintiff has stated a claim, however, based on ADT LLC's statements about the reliability and efficacy of its alarm system and its representation that its customer support centers are connected by "secure communication links."  Complaint, ¶¶ 25(a), (b), (d), 26(b), (c).  Plaintiff has also stated a claim based on ADT LLC's failure to disclose that its wireless security systems use unencrypted and unauthenticated signals. The Court will not dismiss Plaintiff's claims based on these statements and omissions.

### C.   Unjust Enrichment.

"Unjust enrichment occurs when one party has and retains money or benefits that in justice and equity belong to another."  *Trustmark Ins. Co. v. Bank One, Ariz., NA*, 48 P.3d 485, 491 (Ariz. Ct. App. 2002) (citing *City of Sierra Vista v. Cochise Enter., Inc.*, 697 P.2d 1125, 1131 (Ariz. Ct. App. 1984)).  "To establish a claim for unjust enrichment, a party must show: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) the absence of justification for the enrichment and the impoverishment; and (5) the absence of a legal remedy."  *Id.* (citing

*Sierra Vista*, 697 P.2d at 1131).  Plaintiff asserts that ADT LLC was unjustly enriched and she was unjustly impoverished when she purchased equipment and monitoring services in reliance on the company's misrepresentations and material omissions. Complaint, ¶ 98.  She further contends that ADT LLC's retention of her payment is without justification, and that she will be without an adequate remedy at law in the event her ACFA and strict liability claims are denied.  *Id.*, ¶ 102.

ADT LLC does not dispute that Plaintiff has adequately pleaded the first four elements of an unjust enrichment claim.  Instead, it argues that Plaintiff cannot establish the absence of a legal remedy because she can bring an action for fraud and because she is party to a monitoring contract with ADT LLC.  Doc. 10 at 3-4.

In support of its first argument, ADT LLC cites *Stratton v. American Medical Security*, 266 F.R.D. 340 (D. Ariz. 2009), for the proposition that a plaintiff asserting an unjust enrichment claim based on fraud "has an adequate remedy at law and should prove the fraud claim."  *Id.* at 354 (citing *Waddell v. White*, 108 P.2d 565, 568-69 (Ariz. 1940)). This argument is unavailing.  Plaintiff *is* attempting to prove a fraud claim, but asserts her unjust enrichment claim in the alternative.  "An unjust enrichment count should not be dismissed unless it [is] insufficient apart from its inconsistency with the other counts." *Isofoton, S.A. v. Giremberk*, No. CV-04-0798-PHX-ROS, 2006 WL 1516026, at *3 (D. Ariz. May 30, 2006) (citing *Arnold & Assocs., Inc. v. Misys Healthcare Sys.*, 275 F. Supp. 2d 1013, 1030-31 (D. Ariz. 2003); *Adelman v. Christy*, 90 F. Supp. 2d 1034, 1045 (D. Ariz. 2000)).  *Stratton* is not to the contrary – the court refused to certify a class action on an unjust enrichment claim, but did not dismiss the claim.  266 F.R.D. at 354.

In support of its second argument, ADT LLC points to several Arizona cases holding that the doctrine of unjust enrichment has no application "where there is a specific contract which governs the relationship of the parties."  *Brooks v. Valley Nat'l Bank*, 548 P.2d 1166, 1171 (Ariz. 1976); *see also Ashton Co., Inc. v. State*, 454 P.2d 1004, 1010 (Ariz. Ct. App. 1969) (unjust enrichment "has no application to a situation where there is an explicit contract which has been performed").  Plaintiff counters that

more recent cases have criticized *Brooks*' formulation as "misleadingly overbroad" and have held that the "mere existence of a contract governing the dispute does not automatically invalidate an unjust enrichment alternative theory of recovery." *Adleman*, 90 F. Supp. 2d at 1045; *see also Arnold*, 275 F. Supp. 2d at 1030-31. She contends that her monitoring contract with ADT LLC is no bar to her unjust enrichment claim because her current dispute with the company is not governed by this contract. Doc. 17 at 8-9. She further argues that it would be premature for the Court to rule on this question before it has examined the contract. *Id.* at 9-10. The Court agrees.

A contract normally bars an action for unjust enrichment because it precludes a finding that the plaintiff is without an adequate remedy at law – a party deprived of benefits due under a contract generally has the ability to enforce the contract. *See Burge v. Freelife Int'l, Inc.*, No. 09-CV-1159-PHX-JA, 2009 WL 3872343, at *4 (D. Ariz. Nov. 18, 2009) (explaining that the *Brooks* rule rests on the assumption that the contract provides an adequate legal remedy); *see also USLife Title Co. of Ariz. v. Gutkin*, 732 P.2d 579, 585 (Ariz. Ct. App. 1986) (explaining that the *Brooks* rule exists to prevent plaintiff from obtaining "double recovery" in contract and restitution). Consistent with this rationale, Arizona courts permit a plaintiff to bring an unjust enrichment claim where her inability to enforce the contract leaves her without an adequate remedy at law. *See, e.g.*, *Arnold*, 275 F. Supp. 2d at 1024-25 (restitution available where contract is unenforceable under the statute of frauds) (citing *Trollope v. Koerner*, 470 P.2d 91 (Ariz. 1970)). Similarly, a plaintiff may bring an unjust enrichment claim where she asserts a right that is not subject to vindication in an action to enforce the contract. *See Ellis v. J.P. Morgan Chase & Co.*, 950 F. Supp. 2d 1062, 1091 (N.D. Cal. 2013) (unjust enrichment claim not barred by contract unless it "derives from the subject matter of the agreement[]"); *In re Countrywide Fin. Corp. Mortgage Mktg. & Sales Practices Litig.*, 601 F. Supp. 2d 1201, 1220-21 (S.D. Cal. 2009) (unjust enrichment claim would not be dismissed where contracts did not appear to provide for the specific recovery sought by plaintiff); *see generally USLife*, 732 P.2d at 584 (only "a contract *specifically* governing the rights and

obligations of each party precludes recovery for unjust enrichment.") (emphasis added).[5]

The Court cannot conclude that Plaintiff's monitoring contract with ADT LLC specifically governs the rights and obligations at issue here.  Therefore, the Court will not dismiss Plaintiff's unjust enrichment claim.[6]

## IV.    ADT LLC's Motion to Strike.

A court "may order stricken from any pleading . . . any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Although generally disfavored, a motion to strike may be granted where necessary to spare the parties the time and expense associated with "litigating spurious issues."  *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).  A successful motion to strike must show that the law is clear beyond reasonable dispute and that the relevant claim or defense could not succeed under any set of circumstances.  *Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009) (citing *RDF Media Ltd. v. Fox Broadcasting Co.*, 372 F. Supp. 2d 556, 566 (C.D. Cal. 2005)).   The motion to strike "was never intended to furnish an opportunity for the determination of disputed and substantial questions of law."  *Salcer v. Envicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir. 1984), *judgment vacated on other grounds*, 478 U.S. 1015 (1986) (citation omitted).   Moreover, even a purely legal question will not be decided on a motion to strike if discovery might provide useful context for decision or render the question moot.  *See id.* (citations omitted).  Rule 12(f) requires the Court to accept the non-moving party's well-pleaded facts as true and to draw all reasonable inferences in favor of that party.  *Farm Credit Bank of Spokane v.*

---

[5] ADT LLC cites *Johnson v. KB Home*, 720 F. Supp. 2d 1109 (D. Ariz. 2010), for the proposition that a contract may bar an action for unjust enrichment even if it is silent on the specific point of disagreement between the parties.  That much is true: where the plaintiff's claim "clearly arise[s] from relationships governed by" the contract, it is immaterial whether the contract speaks directly to the point of dispute, as the plaintiff may sue to enforce the contract's implied covenant of good faith and fair dealing.  720 F. Supp. 2d at 1123.  But that covenant applies only to matters that "flow from the[] agreement or contractual relationship."  *Id.* (citation omitted).  It does not provide redress where the defendant has been unjustly enriched due to wrongful actions unrelated to the terms of the contract, so it cannot preclude an equitable remedy in these cases.

[6] The Court need not reach Plaintiff's alternative argument that the contract is no bar to her claim because it was induced by fraud.  Doc. 17 at 8.

1    *Parsons*, 758 F. Supp. 1368, 1371 n.4 (D. Mont. 1990).

2          Motions to strike class allegations are particularly disfavored because it is rarely

3    easy to determine before discovery whether the allegations are meritorious.   *See*

4    *Baughman v. Roadrunner Commc'ns*, No. CV-12-565-PHX-SMM, 2013 WL 4230819, at

5    *2 (D. Ariz. Aug. 13, 2013) (a motion for class certification is generally the more

6    appropriate vehicle for determining whether class relief is available) (citing *Thorpe v.*

7    *Abbott Labs., Inc.*, 534 F. Supp. 2d 1120, 1125 (N.D. Cal. 2008)).   Nonetheless, class

8    allegations may be stricken when it is clear from the face of the complaint that no class

9    can be certified.  *Baughman*, 2013 WL 4230819, at *2 (citing *Tietsworth v. Sears*, 720 F.

10   Supp. 2d 1123, 1146 (N.D. Cal. 2010); *Vinole v. Countrywide Home Loans, Inc.*, 571

11   F.3d 935, 941 (9th Cir. 2009)).

12         The question raised by ADT LLC's motion is whether a violation of the ACFA

13   can ever give rise to a class action under Rule 23(b)(3).   To maintain a class action, a

14   prospective class representative must establish four prerequisites: "(1) the class is so

15   numerous that joinder of all members is impracticable; (2) there are questions of law or

16   fact common to the class; (3) the claims or defenses of the representative parties are

17   typical of the claims or defenses of the class; and (4) the representative parties will fairly

18   and adequately protect the interests of the class."   Fed. R. Civ. P. 23(a).   To maintain a

19   class action under Rule 23(b)(3), a prospective class representative must also show "that

20   the questions of law or fact common to class members predominate over any questions

21   affecting only individual members, and that a class action is superior to other available

22   methods for fairly and efficiently adjudicating the controversy."

23         A finding of predominance is generally warranted in a consumer fraud case if each

24   class member was exposed to a substantially similar misrepresentation and manifested a

25   similar kind and degree of reliance.  *In re First All. Mortgage Co.*, 471 F.3d 977, 990

26   (9th Cir. 2006) (citing Rule 23, Advisory Committee Notes to 1966 Amendments,

27   Subdivision (b)(3)).   These factors are evaluated with an eye to both the legal and factual

28   context of the litigation.  *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1010

(9th Cir. 2010). Thus, variation in individual class member's reliance will not defeat a finding of predominance where the cause of action does not require a showing of individual reliance. *Id.* at 1093. Similarly, variation in the defendant's oral misrepresentations to each class member will not defeat a finding of predominance where the plaintiff seeks to certify a claim based on common omissions of material fact or misstatements in publicly available documents. *Id.*

ADT LLC argues that class certification is categorically unavailable in ACFA cases. Doc. 24 at 1-2. It notes that the ACFA requires each plaintiff to show that she actually relied on the defendant's misrepresentation, and cites *Stratton v. American Medical Security, Inc.*, 266 F.R.D. 340, for the proposition that this individualized reliance inquiry will invariably predominate over any issues common to the class. *Id.* Plaintiff disagrees, and notes that courts have certified class actions under the ACFA on at least three occasions. Doc. 17 at 11-17 (citing *London v. Green Acres Trust*, 765 P.2d 538, 542 (Ariz. Ct. App. 1988); *Siemer v. Assocs. First Capital Corp.*, No. CV-97-281-TUC-JMR-JCC, 2001 WL 35948712, at *5 (D. Ariz. Mar. 30, 2001); *Persky v. Turley*, No. CIV-88-1830-PHX-SMM, 1991 WL 329564, at *4 (D. Ariz. Dec. 20, 1991)). In addition, Plaintiff argues that even if the reliance question is inappropriate for class adjudication, the Court could certify an issue-based class to address whether ADT LLC made misrepresentations in violation of the ACFA. *Id.* at 12.

ADT LLC has not shown that it is clear beyond reasonable dispute that the ACFA claim cannot be certified as a class action. ADT LLC argues that certification is barred by *Stratton*, but there are a number of ways that case could plausibly be distinguished. First, *Stratton* dealt with an affirmative misrepresentation claim; the Court went out of its way to emphasize that the plaintiff was not asserting a material omission. 266 F.R.D. at 349. Plaintiff characterizes this as "primarily an omissions case." Doc. 17 at 4. Second, *Stratton* was not dealing with an "inherently flawed" product – a fact the Court relied on to distinguish a case that did certify an ACFA class. 266 F.R.D. at 349. Plaintiff alleges that ADT LLC's wireless home security system is inherently flawed. Complaint, ¶¶ 44-

45.   Third, *Stratton* found that reliance could not be presumed in part because the plaintiff's testimony demonstrated that her purchasing decision was motivated by factors other than the defendant's misrepresentation.  266 F.R.D. at 350.  There is no comparable evidence here.

Plaintiff has a number of colorable arguments as to why class certification may be appropriate in this case.  The Court need not decide whether any of these arguments is meritorious.  It is enough to recognize that the argument presented by ADT LLC involves a "disputed and substantial question[] of law," which the Court should not decide on a motion to strike.  *Salcer*, 744 F.2d at 939.

**IT IS ORDERED:**

1.   ADT Corp.'s motion to dismiss for lack of personal jurisdiction (Doc. 9) is **granted**.

2.   ADT LLC's motion to dismiss for failure to state a claim (Doc. 10) is **granted** with respect to any ACFA claims based on statements set forth in Paragraphs 25(c), 26(a), or 28 of the Complaint.

3.   ADT LLC's motion to dismiss is otherwise **denied**.

4.   ADT LLC's motion to strike (Doc. 10) is **denied.**

Dated this 11th day of February, 2016.

_____
David G. Campbell
United States District Judge